# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROMEO GLOVER and FATIMA GLOVER,<br>    Plaintiffs,<br><br>v.<br><br>TACONY ACADEMY CHARTER SCHOOL, AMERICAN PARADIGM SCHOOLS, NAIMAH HOLLIDAY, LISA KELLY, ZITA COLLINS, NAIDA MIRANDA, ASHLEY REDFEARN, JOHN MCDONALD, ANITA VEGA-KAISER, BARBARA SAUNDERS, LISA JOHNSON AND TACONY ACADEMY CHARTER SCHOOL BOARD OF TRUSTEES,<br>    Defendants. | CIVIL ACTION<br><br><br>NO. 18-56 |

## MEMORANDUM OPINION

Plaintiffs, Romeo Glover ("Romeo") and his mother, Fatima Glover ("Mrs. Glover") seek to hold Tacony Academy Charter School ("TACS"), its employees, its Board of Trustees (collectively "TACS Defendants"), and its management company, American Paradigm Schools ("APS"), liable for a years-long campaign of retaliation and bullying, which allegedly began after Romeo and his mother appealed TACS's decision to expel Romeo from school. The TACS Defendants and APS separately move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons below, Defendants' motions will be granted and denied in part.

### I. Facts

Plaintiff, Romeo Glover, attended TACS from September 2013 until June 12, 2017. During that time, and specifically following expulsion proceedings against Romeo, Plaintiffs allege that Defendants engaged in an escalating campaign of retaliation which included defamation, public shaming, false accusations of school policy violations, and a baseless refusal

to accept graduation credit. The alleged retaliation began at the beginning of 2016.

   a. *January 8, 2016 fight and subsequent expulsion*

For several years prior to 2016, however, Romeo alleges that he was consistently and severely bullied by another student, "TG." The bullying culminated in a fight on January 8, 2016 in which TG allegedly approached Romeo with a pocketknife and told him to stay away from another student, who was Romeo's girlfriend. A fistfight ensued and Romeo was taken to a hospital.

On January 11, 2016, Naihmah Holliday, the Principal of TACS, ("Principal Holliday") informed Romeo that he would be suspended for 10 days. Next, Principal Holliday sent Romeo and his parents a letter scheduling a formal expulsion hearing, which attached witness statements from TG and other students who observed the fight. The students were not available to testify during the formal expulsion hearing. Nevertheless, these unsworn, anonymous, and unsigned statements formed the entire basis of the Defendants' decision to expel Plaintiff.

   b. *Romeo experiences retaliation for appealing his expulsion*

On February 5, 2016, the Board of Trustees unanimously voted to expel Romeo from school. On February 14, 2016, Romeo filed a Notice of Appeal of the expulsion decision in the Philadelphia Court of Common Pleas. Judge Linda Carpenter ordered TACS to readmit Romeo pending further hearings by the court. The Complaint alleges that several of the Defendants engaged in a pattern of retaliation following the appeal, which only increased as the litigation proceeded. On April 21, 2016, Judge Carpenter ruled that Defendants had violated Romeo's due process rights under Pennsylvania law by expelling him based exclusively on the unsworn and unsigned witness statements.

Following Romeo's appeal, Principal Holliday and other TACS staff members allegedly

responded by accusing Romeo of violating various school policies or instituting disciplinary proceedings against him. Specifically, on February 25, 2016, Principal Holliday gave Romeo a detention for – in contravention of school policy – opening the front door of TACS to let other students inside. On March 1, 2016, Romeo's Spanish teacher gave Romeo a disciplinary write up for having a cell phone in his backpack in class, even though the cell phone was actually a calculator. On May 20, 2016, another teacher gave Romeo a dress code violation.

Plaintiffs allege that Principal Holliday and other TACS staff also defamed Romeo. According to the Complaint, Principal Holliday asked Romeo's girlfriend why she would want to attend prom with him, and Defendant Zita Collins, a guidance counselor at TACS, ("Guidance Counselor Collins") posted a public statement on TACS' Facebook page stating that a version of events provided by Romeo to the *Philadelphia Inquirer* was "full of fiction to say the least." And, Principal Holliday called Romeo a "liar" and belittled him in front of TACS' front office staff.

Last, Romeo alleged that Defendants retaliated against him by denying him credit recovery for the time he spent on suspension and in the hospital.

*c. Romeo's Second Expulsion Hearing and Subsequent Appeal*

After Judge Carpenter's ruling overturning the expulsion decision, TACS held a second expulsion hearing on August 24, 2016. The Board of Trustees of TACS voted unanimously to expel Romeo again even though Defendants admitted the same problematic unsworn statements as before. Romeo filed an Emergency Motion for Order of Supersedeas in the Philadelphia Court of Common Pleas and Judge Abbe Fletman ordered Romeo back to school pending the appeal. Later the next year, Judge Carpenter ultimately reversed the second expulsion because the TACS Board of Trustees again violated Romeo's due process rights at the expulsion hearing

3

on August 24, 2016.

Following the emergency motion to appeal, Plaintiffs allege that Principal Holliday and Guidance Counselor Collins escalated their campaign of retaliation against Romeo. Principal Holliday allegedly berated him for being in school. She confronted Mrs. Glover and told her to "get out" of TACS and dressed down Romeo and Mrs. Glover in front of other staff members and students. She also loudly accused Plaintiffs of lying to the press about Romeo's expulsion. She told teachers to punish Romeo for possessing a phone in his backpack during class. Guidance Counselor Collins also sent a formal letter denying Romeo credit for the program that he attended during the summer of 2016. In response to appeals of that decision, Principal Holliday had a discussion with the principal of the Philadelphia College and Career Counseling Center, and told the latter that Romeo "had issues" and had lied about the expulsion hearing. On January 20, 2017, Collins sent Mr. and Mrs. Glover a letter ("Truancy Letter") informing them that Romeo had been absent more than twenty days without an excuse and requesting a truancy meeting. The Complaint alleges that the statements in the letter concerning his absences were false.

Plaintiffs' Complaint is replete with several episodes of alleged retaliation following the second expulsion hearing, but Plaintiff's briefing highlights the following: During one episode, Guidance Counselor Collins falsely accused Romeo of being on his cell phone during class, whereupon Collins directed Romeo to call his parents from the administrative office. When he did so, Principal Holliday emerged from her office and told Romeo off for using a phone. Principal Holliday then slapped the phone out of Romeo's hands, causing injury to his hand.

Upon Romeo's graduation, TACS and Principal Holliday filed an appeal of Judge Carpenter's decision. According to the Complaint, the appeal caused Romeo severe emotional

distress, anxiety, depression, as well as other emotional and physical symptoms, for which he sought psychotherapy and medication. Mrs. Glover has also experienced anxiety.

Plaintiffs assert claims against TACS, American Paradigm School, four employees of TACS including Naimah Holliday, Lisa Kelly, Zita Collins, Naida Miranda, and Ashley Redfearn (collectively "Employee Defendants"), as well as the TACS Board of Trustees and its members, including John McDonald, Anita Vega-Kaiser, Barbara Saunders, and Lisa Johnson (collectively, "Board of Trustees"). The claims are: (1) First Amendment retaliation in violation of 42 U.S.C. § 1983 (Count One) against all Defendants; (2) negligent infliction of emotional distress (Counts Two and Four) against all Defendants; (3) intentional infliction of emotional distress (Count Three) against all Defendants; (4) defamation against APS and the Employee Defendants; and (5) loss of consortium by Mrs. Glover only against all Defendants.

**II.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555). Furthermore, a court may grant a motion to dismiss under Rule 12(b)(6) if there is a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

5

In analyzing a motion to dismiss legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Generally that determination is made upon a review of the allegations contained in the complaint, exhibits attached appropriately to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, where Defendants have attached to their motion to dismiss the Docket Sheet from the underlying state court expulsion proceedings and appeals, those may properly be considered. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Ground Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

### III. Discussion

#### A. APS' Liability

APS moves to dismiss the claims against it because the only factual allegation pertaining to APS is that it is an education management organization that "oversees, supervises, supports, serves and manages" TACS. "It is well established in Pennsylvania law that a principal may be held vicariously liable for the actions of its agent." *Nardella v. Dattilo*, 36 Pa. D. & C.4th 364, 376 (Com. Pl. 1997); *see also Bolus v. United Penn Bank*, 525 A.2d 1215, 1221 (Pa. Super. 1987) (holding that an agency relationship exists if the agent had express authority to act, implied authority to bind the principal, apparent authority to act, or authority that the principal is estopped to deny). However, Plaintiffs allege no facts demonstrating that any other Defendant acted with authority from APS or that APS controlled any other Defendants' actions. *See Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp.2d 505, 512 (E.D. Pa. 2009) (dismissing claims against an alleged principal because the Complaint contained no allegations that the principal "exerted any control" over the alleged agent). Plaintiff's claims against APS

6

will be dismissed without prejudice.

### B. Retaliation under Section 1983

Romeo and Mrs. Glover each assert their own claims of First Amendment retaliation under 42 U.S.C. § 1983, however the TACS Defendants move only to dismiss those made against them by Mrs. Glover. The First Amendment protects citizens' right to free speech. *See* U.S. CONST. amend I. It follows that the government may not retaliate against an individual for exercising her right to freedom of speech because such retaliation would "inhibit exercise of the protected right." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted).

As to the first prong, Mrs. Glover alleges that she provided oral testimony at Romeo's expulsion hearing and she was one of the parties who filed Notices of Appeal and Motions for Order of Supersedeas with the Philadelphia Court of Common Pleas. Constitutionally protected conduct includes giving oral testimony or petitioning the government for grievances. *See Reilly v. City of Atlantic City*, 532 F.3d 216, 231 (3d Cir. 2008) (holding that testifying at a public employee's trial is constitutionally protected speech); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) (holding that filing a lawsuit constitutes protected conduct). Therefore, Mrs. Glover sufficiently states that she engaged in constitutionally protected conduct.

As to the second and third prongs, the TACS Defendants argue that Mrs. Glover must assert that she personally (and not just her son) suffered retaliation in order to state a valid claim,

but they provide no citation for that proposition. Whether and under what circumstances close relatives of a plaintiff who claims retaliation can themselves recover under a Section 1983 rubric is an unsettled question of law. *See Ballas v. City of Reading*, 2001 WL 73737 (E.D. Pa. 2001) (dismissing Section 1983 claims by husband of a terminated employee who exercised First Amendment rights); *but see Miller v. Mitchell*, 598 F.3d 139, 142 (3d Cir. 2010) (finding that parents could assert Section 1983 after their children were threatened with prosecution for sexting because parents have a right "to raise their children without undue state influence."); *R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp.2d 188, 197 (D.N.J. 2008) (permitting claims by parents after school falsely reported mother of sexual abuse). In addition, while parents have standing to "prosecute IDEA claims on their own behalf," *see Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 533 (2007), federal courts are split as to whether that right extends to other remedial statutes, such as the Americans with Disabilities Act and Section 1983 claims. *See e.g., A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp.2d 660, 674 (E.D.N.Y. 2012), *aff'd sub nom., Moody ex rel. J.M. v. NYC Dep't of Educ.*, 513 F. App'x 95 (2d Cir. 2013) (recognizing split in authority and citing cases).

Whether and under what circumstances Mrs. Glover could recover on her retaliation theory is a matter requiring some analysis and the court declines to enter into the analysis absent comprehensive briefing on these issues. Therefore, Defendants' Motion to Dismiss will be denied without prejudice.

### C. Negligent Infliction of Emotional Distress

All Defendants seek to dismiss Plaintiffs' claims for negligent infliction of emotional distress ("NIED"). The claims appear to be premised on the theory that an NIED claim can arise from "a contractual or fiduciary duty" between the plaintiff and defendant. *See Armstrong v.*

8

*Paoli Memorial Hosp.*, 633 A.2d 605, 609 (Pa. Super. 1992). Relief has been provided on this theory in a number of contexts. *See Bonson v. Diocese of Altoona-Johnstown*, 67 Pa. D. & C.4th 419, 431 (Com. Pl. 2004) (against an archdiocese whose priests sexually abused parishioners); *Corbett v. Morgenstern*, 934 F. Supp. 680, 683-84 (E.D. Pa. 1996) (against a psychologist who engaged in a sexual relationship with their patient); *Crivellaro v. Pennsylvania Power & Light Co.*, 491 A.2d 207, 208 (Pa. Super. 1985) (against an employee who was forced to attend an alcohol rehabilitation program).

All of these cases were, however, decided prior to the Pennsylvania Supreme Court's decision in *Toney v. Chester Cty. Hosp.*, in which the justices were evenly divided on whether the theory is cognizable in Pennsylvania. 36 A.3d 83, 84 (Pa. 2011). Those justices who did recognize the fiduciary theory of liability "limit[ed] the reach of . . . NIED claim[s] to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach [and] the special relationships must encompass an implied duty to care for the plaintiff's emotional well-being." *Id.* at 95. Such relationships include those "involving life and death" like the relationship between a doctor and patient. *Id.* In deciding whether imposition of a duty is appropriate, the factors to consider are: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Id.* at n.11. The parties have not made any arguments with respect to any of these factors. In the absence of such briefing, the Court declines to resolve this issue. *Cf. Hershman v. Muhlenberg Coll.*, 2014 WL 1661210, at *4 (E.D. Pa. 2014) (rejecting an NIED claim against a college because "[t]he relationship between a college and its students does not obviously hold the potential of deep

emotional harm."). Therefore, Defendants' Motion to Dismiss Counts Two and Four will be denied without prejudice.

### D. Intentional Infliction of Emotional Distress

All Defendants also move to dismiss Plaintiffs' intentional infliction of emotional distress claim. The elements of intentional infliction of emotional distress are: (1) a person who by extreme and outrageous conduct; (2) intentionally or recklessly causes; (3) emotional distress to another; and (4) the distress is severe. *See Reardon v. Allegheny Coll*, 926 A.2d 477, 487 & n.12 (Pa. Super. 2007). Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997). The conduct described in Plaintiffs' Complaint does not approach that high standard and Plaintiffs have so conceded by failing to counter Defendants' argument to dismiss this claim. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief. . . ."). Therefore, Count Three will be dismissed with prejudice.

### E. Defamation

Count Five asserts a claim for defamation under Pennsylvania law. Although it is unclear from the Complaint which particular statements are allegedly defamatory, Plaintiff's brief suggests they fall into three categories. First, statements made by Defendants to third parties that Plaintiffs were liars. Second, statements made by Defendants that Romeo defied or disregarded school policies. Third, Principal Holliday's statement to Romeo that he "looked a mess."

Defendants have argued, as a preliminary matter, that the statute of limitations bars

Plaintiffs' defamation claims. The statute of limitation to bring a claim for defamation is one year. *See* 42 Pa. C.S.A. § 5523(1). Plaintiff's lawsuit was filed on January 8, 2018. Therefore any alleged defamatory statements made before January 8, 2017 are barred by the statute of limitations unless the statute of limitations is tolled.

Under Pennsylvania law, a statute of limitations for defamation is tolled if "a party neither knows nor reasonably should have known" that a defamatory statement was made for more than one year before filing suit. *See Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005); *Nelson v. LA Fitness Int'l, LLC*, 2016 WL 490063, at *3 (Pa. Super. 2016) (applying the discovery rule to a claim for defamation). In practice, this means that Plaintiff had only one year to bring a defamation claim based on a statement made in his presence because he knew or reasonably should have known about his defamation claim at the time he heard the statement, however statements made outside of his presence may not be subject to the same statute of limitations. Thus, any defamation claims arising from Romeo's Spanish teacher falsely accusing him of having a cell phone in his backpack on March 1, 2016 or from Guidance Counselor Collins falsely accusing Romeo of being "consistently late and irresponsible" on December 20, 2016 are barred by the statute of limitations because both statements were made more than one year before Romeo instituted the present lawsuit and because he reasonably should have known about the statements as they were made in his presence. Additionally, any defamation claim arising from Guidance Counselor Collins' March 2, 2016 post on TACS's public Facebook page that an article in the *Philadelphia Inquirer* concerning Romeo was "full of fiction to say the least" is also barred by the statute of limitations because the statement was made more than a year before Romeo instituted this suit and it was made on a publicly available website. *See Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010) (holding that the statute of limitations is not tolled as

to defamatory statements made on publicly available "mass-media" websites). Although other incidents may also be barred by the statute of limitations, a court may only adjudicate statute of limitations regarding a defamation claim on a motion to dismiss "if the complaint reveals on its face that it has not been filed within the statute of limitations." *Kreimer v. Philadelphia Inquirer, Inc.*, 2004 WL 1196258, at *1 (E.D. Pa. 2004).

To recover for those allegedly defamatory statements that are not barred by the statute of limitations, Plaintiffs must allege: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See* 42 C.S.A. § 8343(a).

As to the first element of a claim for defamation, "[i]t is the function of the court to determine whether the challenged publication is capable of defamatory meaning. If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 123-24 (Pa. 2004). A statement is deemed to be defamatory "if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule or injure him in his business or profession," or when a statement "lower[s] a person in the estimation of the community, [or] deter[s] third persons from associating with him. . . ." *Green v. Mizner*, 692 A.2d 169, 172 (Pa. Super. 1997). The touchstone in determining whether a statement is capable of defamatory meaning is how the statement would be interpreted by the average person in the intended community. *See Maier v. Maretti*, 671 A.2d 701, 702 (Pa. Super. 1995). "Pennsylvania courts have shown a willingness to interpret relatively mild statements as being capable of a defamatory

12

meaning." *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp.2d 377, 399 (E.D. Pa. 2011); s*ee also Birl v. Phila. Elec. Co.*, 167 A.2d 472, 475 (Pa. 1960) (holding statement that ex-employee quit "without notice" was capable of defamatory meaning because co-workers could conclude that ex-employee "lacked honor and integrity.").

Defendants first argue that statements that Romeo lied or is a liar and statements that Romeo violated school policies are not capable of defamatory meaning. However, Pennsylvania law is to the contrary. *See Smith v. Wagner*, 588 A.2d 1308, 1311 (Pa. Super. 1991) (holding that verbal statements that plaintiff was a liar are capable of defamatory meaning . . . as a matter of law."); *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 462 (Pa. Super. 1984) (finding allegation that employee violated company policies by opening company mail defamatory); *but see Beckman v. Dunn,* 419 A.2d 583, 587 (Pa. Super. 1980) (finding statement by professor that student would act "by hook or by crook" non-defamatory in the context of a private letter to University ombudsman). Therefore, on a motion to dismiss, where the standard requires the Court to draw all reasonable inferences in favor of the Plaintiffs, these statements by the Employee Defendants are capable of defamatory meaning.

The incident in which Principal Holliday told Romeo that he "looked a mess" presents different considerations. Unlike the other incidents, it does not involve a situation in which Principal Holliday accused Romeo of lying or violating school policies. In *Scott-Taylor, Inc v. Stokes*, the Pennsylvania Supreme Court held that the statement that an apartment building complex looks like a "chicken coop" is not capable of defamatory meaning merely because it was "annoying and embarrassing to the person to whom they are attributed." 229 A.2d 733, 734 (Pa. 1967). A statement must "lower [Romeo] in the estimation of the community" in order to

13

constitute defamation. *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 123 (Pa. 2004). A single observation that a student "looked a mess," without more, does not.[1]

### F. Loss of Consortium

Defendants also move to dismiss Mrs. Glover's claim for loss of consortium, which is premised on Defendants' actions against her son. However, "[c]laims for loss of filial consortium have never been recognized in [Pennsylvania]." *Jackson v. Tastykake, Inc.*, 648 A.2d 1214, 1217 (Pa. Super. 1994). Therefore, Mrs. Glover's loss of consortium claim will be dismissed with prejudice.

An order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**_____**
**WENDY BEETLESTONE, J.**

**June 21, 2018**

---

[1] Defendants also moved to dismiss Plaintiffs' defamation claim because Plaintiffs failed to allege "special harm." However, Defendants only made this argument in their reply brief. The Third Circuit has consistently held that it is inappropriate to argue new matters in a reply brief. *See United States v. Cruz*, 757 F.3d 372, 388 (3d Cir. 2014) (holding that arguments raised on reply are waived); *Werner v. Werner*, 267 F.3d 288, 302 (3d Cir. 2001). Thus, the argument will not be considered at this time because Plaintiffs have not had an opportunity to respond.