IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROMEO GLOVER and FATIMA GLOVER,<br>　　　　Plaintiffs,<br><br>　　　v.<br><br>TACONY ACADEMY CHARTER SCHOOL, AMERICAN PARADIGM SCHOOLS, NAIMAH HOLLIDAY, LISA KELLY, ZITA COLLINS, NAIDA MIRANDA, ASHLEY REDFEARN, JOHN MCDONALD, ANITA VEGA-KAISER, BARBARA SAUNDERS, LISA JOHNSON AND TACONY ACADEMY CHARTER SCHOOL BOARD OF TRUSTEES,<br>　　　　Defendants. | CIVIL ACTION<br><br><br>NO. 18-56 |

## MEMORANDUM OPINION

Defendant American Paradigm Schools ("APS") seeks to extract itself from a protracted dispute between, on the one hand, Plaintiffs, Romeo Glover ("Romeo") and his mother, Fatima Glover ("Mrs. Glover"), and on the other hand, various individuals and entities tied to the Tacony Academy Charter School (collectively "TACS Defendants").[1] *See generally Glover v. Tacony Acad. Charter Sch.*, 2018 WL 3105591 (E.D. Pa. June 25, 2018). APS moves to dismiss under Rule 12(b)(6) Plaintiffs' claims as well as the TACS Defendants' crossclaims on the grounds that APS is neither directly nor vicariously liable for the alleged harm inflicted upon Romeo and Mrs. Glover. For the reasons below, APS's motions will be granted in part and denied in part.

---

[1] The TACS Defendants are TACS, five employees of TACS, including Naimah Holliday, Lisa Kelly, Zita Collins, Naida Miranda, and Ashley Redfearn (collectively "Employee Defendants"), as well as the TACS Board of Trustees and its members, including John McDonald, Anita Vega-Kaiser, Barbara Saunders, and Lisa Johnson (collectively, "Board of Trustees").

**I.     Facts**

The case arises from an allegedly years-long campaign of retaliation and bullying perpetuated by Defendants against Plaintiffs. Romeo attended TACS as a student from September 2013 until June 12, 2017. Following a failed attempt to expel Romeo in January 2016, Defendants allegedly engaged in an escalating campaign of retaliation that included defamation, public shaming, false accusations of school policy violations, and a baseless refusal to accept graduation credit. The Amended Complaint alleges that the campaign of retaliation and harassment deprived Plaintiffs of their constitutional rights, inflicted emotional distress upon them, and damaged their reputation within the community. The motions to dismiss currently before the Court, however, concern only the narrow question of APS's liability to the Plaintiff. Thus, only those facts relevant to resolving that narrow issue are recounted here.

APS is an education management organization that contracted with TACS to provide management and consulting services to the school. While Plaintiffs aver generally that "TACS is run" by APS, the Amended Complaint also contains specific provisions of the contracts between APS and TACS that paint a more precise picture of the relationship among the Defendants.[2]

Plaintiffs allege that during the period from January 8, 2016 through October 1, 2016, APS and TACS operated under an Academic and Business Services Agreement ("2011

---

[2] Plaintiffs do not attach copies of any of the referenced contracts to the Amended Complaint. *Cf. Rivera v. Dealer Funding, LLC*, 178 F.Supp.3d 272, 275-76 (E.D. Pa. 2016) ("A plaintiff is not required to attach the subject contract to the complaint or plead its terms verbatim in order to state a claim."). Nor does APS attach copies to its motion to dismiss. *Cf. Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Therefore, the Court relies only on the contractual provisions found within the Amended Complaint.

Agreement"),³ which required APS to advise the school on various business affairs and oversee TACS's education programs, including the school's Code of Conduct. The 2011 Agreement also delegated to APS authority to recruit and supervise TACS's school leader: "APS shall have the authority and responsibility, in conjunction with the Board of Trustees, consistent with State law, to recruit and supervise the Principal and to hold him or her accountable for the success of the School." Further, the 2011 Agreement required APS "to consult and advise TACS with respect to its obligations" to provide students "due process hearings in conformity with the requirements of State and federal law regarding discipline."

The Amended Complaint further alleges that TACS and APS entered into an Amended and Restated Academic and Support Agreement that became effective on October 1, 2016 ("2016 Agreement"). Similar to the 2011 Agreement, the 2016 Agreement delegated to APS certain management responsibilities, namely "the authority and responsibility . . . to recruit and supervise the School Director," defined as both "the person in charge of the day-to-day operation of the School" as well as the Chief Executive Officer of the school. The 2016 Agreement also granted APS the authority to disapprove of renewal of the School Director's employment contract or recommend termination of the School Director. Further, the 2016 Agreement required the School Director to "coordinate the management of the school with, and report on a day to day basis to, the APS Chief Executive Officer or a designee specified in writing by the APS Chief Executive Officer."

The Amended Complaint states that certain named Defendants were either a "Principal" or "School Director" under the terms of the 2011 and 2016 Agreements. Specifically, Plaintiffs allege that Defendant Naimah Holliday, who was the Principal of TACS, fell within the

---

³ The Amended Complaint does not allege when the Agreement originally went into effect, but references it as the "the 2011 Agreement," indicating that it went into effect sometime before January 8, 2016.

definition of "Principal" under the 2011 Agreement and "School Director" under the 2016 Agreement. In addition, Plaintiffs claim that Defendant Ashley Redfearn, who was the CEO of TACS, fell within the definition of "School Director" under the 2016 Agreement.

As to APS's role in the scheme to harass Romeo and Ms. Glover, Plaintiffs allege that Holliday, Redfearn, and "the other individual defendants . . . consulted with and were advised by APS on whether and how to discipline and otherwise retaliate against Plaintiff Glover." Moreover, Plaintiffs allege that APS evaluated and made employment retention decisions regarding Defendants Holliday and Redfearn "based at least in part on their handling of Plaintiff Romeo Glover's baseless discipline and exercise of his civil rights." Finally, Plaintiffs allege that Defendants engaged in certain behaviors—such as Redfearn's refusal to accept Romeo's credit recovery program and the TACS Board of Trustees' decision to file "an untimely and frivolous appeal" in a related state court matter—"after consultation with and approval from APS."

## II. Procedural History

Plaintiffs filed suit against APS and the TACS Defendants to which both APS and the TACS Defendants responded with motions to dismiss. The Court granted in part and denied in part the motions to dismiss. *See Glover*, 2018 WL 3105591, at *1. Relevant to this matter, the Court dismissed Plaintiffs' claims against APS without prejudice on the ground that "Plaintiffs allege no facts demonstrating that any other Defendant acted with authority from APS or that APS controlled any other Defendants' actions." *Id.* at 3.

Plaintiffs then filed an Amended Complaint, again bringing claims against APS and the TACS Defendants. The claims are: (1) First Amendment retaliation in violation of 42 U.S.C. § 1983 (Count One) against all Defendants; (2) negligent infliction of emotional distress (Counts

4

Two and Three) against APS, the TACS Board of Trustees, and the individual Defendants; and (3) defamation (Count Four) against APS and Defendants Redfearn, Holliday, Collins and Miranda. In response, APS filed a second motion to dismiss. The TACS Defendants, on the other hand, filed an answer to the Amended Complaint and brought a crossclaim against APS, alleging that "[i]f the allegations . . . are proven at the time of trial . . . then [APS] is alone liable to Plaintiffs, or is jointly and severally liable with Answering Defendants, or is liable over to Answering Defendants on Plaintiffs' claims and/or is liable to Answering Defendants." APS moved to dismiss TACS Defendants' crossclaims against it as well.

### III. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555). In analyzing a motion to dismiss, legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

## IV. Discussion

APS advances two arguments in support of its motions to dismiss. First, APS argues that the Amended Complaint lacks sufficient factual allegations to establish it deprived Plaintiffs of their constitutional rights. Second, APS argues that the Amended Complaint does not contain sufficient factual allegations to support a claim that an agent-principal relationship existed between APS and any of the individual Defendants, as is required to hold APS vicariously liable for the tortious conduct of the TACS Defendants.

### A. Constitutional Claims

Both Romeo and Ms. Glover assert claims of First Amendment retaliation under 42 U.S.C. § 1983 against APS. The First Amendment protects citizens' right to free speech, s*ee* U.S. CONST. amend I, and the government may not retaliate against an individual for exercising her right to freedom of speech because such retaliation would "inhibit exercise of the protected right." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). The Supreme Court has made clear, however, that "vicarious liability is inapplicable to . . . § 1983 suits." *Iqbal*, 556 U.S. at 676. "[A] plaintiff must plead that each . . . defendant, through [the defendant's] own individual actions, has violated the Constitution." *Id.*

As the Supreme Court explained in *Monell v. Department of Social Services of New York*, when the defendant is a corporate entity, "a plaintiff cannot rely upon respondeat superior" to establish liability, and, instead, "must show that the entity had a policy or custom that caused [the] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). That is no less true when the defendant is a private corporation. *Id.* (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)).

Not all state action "rises to the level of a custom or policy."[4] *Natale*, 318 F.3d at 584. The Third Circuit has explained that "[a] policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy, or edict." *Id.* (internal quotations omitted). And a custom is "an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Id.* (internal quotations omitted). "[V]ague assertions" of a policy or custom, without more, are not sufficient to state a claim against a corporate entity. *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).

Here, the Amended Complaint alleges no facts to establish that a policy or custom of APS caused Plaintiffs constitutional harm. The only allegations tying APS to the alleged First Amendment retaliation are that "Defendant TACS, Holliday, and, on information and belief, the other individual defendants, consulted with and were advised by APS on whether and how to discipline and otherwise retaliate against Plaintiff Romeo Glover;" "the TACS Board of Trustees . . . voted unanimously to permanently expel [Romeo] from TACS . . . at the direction and/or with the approval of defendants Redfearn, TACS, and American Paradigm Schools;" and, "Defendant Redfearn consulted with, and received guidance from, APS regarding whether to deny Romeo's previously-approved credit recovery program."

These speculative and conclusory allegations are, without more, insufficient to state a claim under *Monell*. The "vague assertions" of consultation fail to establish that a decisionmaker with final authority within APS issued something that would amount to a policy regarding the treatment of Romeo or Ms. Glover. *Groman*, 47 F.3d at 637. Nor does the Amended Complaint contain facts to support the conclusion that APS engaged in a widespread practice of retaliating

---

[4] To be liable under Section 1983, APS must also have acted "under color" of state law. 42 U.S.C § 1983; *see also Monroe v. Pape*, 365 U.S. 167, 171 (1961). Because APS does not address the state action question in its motions to dismiss, neither will this Court.

against students that exercised protected First Amendment rights. The "conclusory statements" are insufficient to support a conclusion that a policy or custom of APS caused Plaintiffs' constitutional injuries. *Iqbal*, 556 U.S. at 678.[5]

Plaintiffs' Section 1983 claims against APS will therefore be dismissed with prejudice.

### B. Common Law Torts

APS also moves to dismiss Plaintiffs' claims for negligent infliction of emotional distress ("NIED") and defamation. Unlike Section 1983 claims, "[i]t is well established in Pennsylvania law that a principal may be held vicariously liable for the actions of its agent," for common law causes of action. *Nardella v. Dattilo*, 36 Pa. D. & C.4th 364, 376 (Com. Pl. 1997). Plaintiffs argue APS is vicariously liable for the tortious conduct of the TACS Defendants because the Amended Complaint "properly establishes the principal-agent relationship between TACS and APS." APS counters that the NIED and defamation claims should be dismissed because the Complaint "does not allege sufficient facts that TACS or the individual Defendants were agents of APS, such that APS could be held vicariously liable under Plaintiffs' negligent infliction of emotional distress and defamation claims." The dispositive issue, then, is whether the Amended Complaint contains sufficient facts for the Court to conclude that a principal-agent relationship plausibly existed between APS and the TACS Defendants.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject

---

[5] Plaintiffs' briefing suggests that, at bottom, the allegations are an attempt to hold APS vicariously liable for the tortious conduct of the other TACS Defendants. Plaintiffs argue that the Amended Complaint "establishes APS's actual knowledge of the deprivation of Plaintiffs' constitutional rights through the knowledge of its employees," referencing the individual Defendants. The problem with this argument is two-fold. First, there are no allegations that any of the named individual Defendants, or for that matter any TACS employees, were employed by APS. Second, and more fundamentally, Plaintiffs must allege APS "through [its] own individual actions"—and not through the actions of its employees or agents—caused the Glovers' constitutional deprivation. *Iqbal*, 556 U.S. at 676.

to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01. Under Pennsylvania law, an agency relationship may be created by any of the following:

> (1) express authority directly granted by the principal to bind the principal as to certain matters; or (2) implied authority to bind the principal to those acts of the agent that are necessary, proper and usual in the exercise of the agent's express authority; or (3) apparent authority, i.e. authority that the principal has by words or conduct held the alleged agent out as having; or (4) authority that the principal is estopped to deny.

*Bolus v. United Penn Bank*, 525 A.2d 1215, 1222 (Pa.Super.1987). The party asserting the agency relationship has the burden of proving an agency relationship exists. *Id.* Although "whether an agency relationship exists is a question of fact for the jury," *id.*, Plaintiffs must allege facts sufficient to support a conclusion that some or all of the TACS Defendants were agents of APS. *See, e.g.*, *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp.2d 505, 512 (E.D. Pa. 2009) (dismissing claims against an alleged principal because the Amended Complaint contained no allegations that the alleged principal "exerted any control" over the alleged agent).

In determining whether the Amended Complaint contains sufficient facts to plausibly state a principal-agent relationship between APS and the TACS Defendants, the Fifth Circuit's opinion in *U.S. ex rel. Bias v. Tangipahoa Parish School Bd.* is instructive. 816 F.3d 315 (5th Cir. 2016). There, the plaintiff, a member of the Marine Corps on active military duty, sued a school board alleging that he was the school board's agent. *Id.* Although paid by the Marine Corps, plaintiff worked as an instructor for a high school's Junior Reserve Officers' Training Corps program. *Id.* Plaintiff performed teacher-like functions and was evaluated and supervised by the school's principal. *Id.* The Fifth Circuit concluded that "exactly what the relationship was between [plaintiff] and [the school board] is unclear," but "[t]here is enough pled in the complaint to make it plausible" that plaintiff was "an agent." *Id.*

9

Here it is similarly unclear what the relationship was between APS, TACS, and specific TACS employees, namely Defendants Holliday and Redfearn. Still, the Complaint contains sufficient allegations to make it plausible that a principal-agent relationship existed. Plaintiffs allege that per the 2011 Agreement, APS had "the authority and responsibility . . . to recruit and supervise the Principal and to hold him or her accountable for the success of the School." Further, Plaintiffs allege APS's supervisory and evaluative authority extended to the administration of a Code of Conduct for the school. It is plausible that TACS's Principal, Defendant Holliday, was APS's agent under the terms of the 2011 Agreement because Holliday worked on behalf of, and under the supervision of, APS to achieve educational success at the school.

Similarly, Plaintiffs allege that the 2016 Agreement granted APS "authority and responsibility" over TACS's School Directors, Defendants Holliday and Redfearn. APS could disapprove renewal of their employment contracts or recommend termination. In addition, Plaintiffs allege the School Directors were required to "coordinate the management of the school" with APS. It is thus plausible that Defendants Holliday and Redfearn were APS's agents under the terms of the 2016 Agreement because, again, Holliday and Redfearn acted on behalf of, and under the supervision of, APS to ensure success at TACS.

Plaintiffs have thus alleged sufficient facts to support a conclusion that Defendants Holliday and Redfearn were agents of APS, and that, as such, APS is vicariously liable for the tortious conduct committed by Defendants Holliday and Redfearn. The conclusion, however, does not extend to the other TACS Defendants because the Complaint does not contain sufficient facts to support a conclusion that any of the remaining individual Defendants or the TACS Board of Trustees were APS's agent. So, APS cannot be held vicariously liable for the tortious conduct

of the TACS Board of Trustees or the remaining individual TACS Defendants.[6]

APS's motion to dismiss Counts Two, Three, and Four will therefore be denied with prejudice.

**C. Crossclaim**

In their Answer to Plaintiffs' Amended Complaint, the TACS Defendants filed a crossclaim seeking indemnification or contribution from APS, to which APS filed a motion to dismiss. APS argues that "if the Court rules in APS's favor on its pending motion to dismiss Plaintiff's Complaint . . . then Co-Defendants' Cross-claims against APS necessarily fail . . . since they are premised on APS being found liable on Plaintiffs' claims in the main action, and so must be dismissed." Because the Amended Complaint contain sufficient facts to support a conclusion that APS is liable on Plaintiffs' claims, APS's motion to dismiss the TACS Defendants' Crossclaim will be denied without prejudice.[7]

An order follows.

**BY THE COURT:**

**/s/ Wendy Beetlestone**
_____
**WENDY BEETLESTONE, J.**

**September 28, 2018**

---

[6] The Court need not determine whether the Amended Complaint contains sufficient facts to support a conclusion that TACS, itself, is an agent of APS because Counts Two, Three, and Four are not brought against Defendant TACS. Plaintiffs bring Counts Two and Three against "American Paradigm Schools, the TACS Board of Trustees, and the Individual Capacity Defendants." And Plaintiffs bring Count Four against "Defendants American Paradigm Schools, Redfearn, Holliday, Collins and Miranda."

[7] APS does not argue, and this Court will thus refrain from determining, whether the TACS Defendants have alleged sufficient facts to support a conclusion that they are entitled to indemnification or contribution from APS.